900 So.2d 1021 (2005)
Stella LEE
v.
UNUM LIFE INSURANCE COMPANY OF AMERICA.
No. 2004-CA-1483.
Court of Appeal of Louisiana, Fourth Circuit.
March 30, 2005.
*1022 Bonnie L. Zakotnik, New Orleans, LA, for Plaintiff/Appellee.
Lauren A. Welch, Retha E. Karnes, McCranie Sistrunk Anzelmo Hardy Maxwell & McDaniel, Metairie, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MAX N. TOBIAS, JR., and Judge ROLAND L. BELSOME).
MAX N. TOBIAS, JR., Judge.
This case arises out of a coverage dispute over disability benefits between a school bus driver who was injured in an automobile accident and the insurance company providing group coverage through her employer.
Stella Lee ("Lee") was employed as a school bus driver for the Orleans Parish School Board ("OPSB") for twenty-five years. On 17 May 2001, a third party driver, who was cited for running a stop sign, struck the school bus Lee was driving. Lee was not cited for any violations following the accident. In the accident Lee sustained injuries, as a result of which she was unable to work from 17 May 2001 until 14 November 2001. During that period, *1023 Lee received workers' compensation benefits.
In 1999, Lee applied to become a beneficiary under a disability policy issued by Unum Life Insurance Company of America ("UNUM") to the OPSB.[1] She received two documents from OPSB regarding the UNUM policy plan: a two-page handout and a pamphlet describing coverage available under the plan. The pamphlet states, in part, that
UNUM's Disability Insurance Can Help
 It replaces a portion of your income.
 It helps provide financial security when you are disabled, whether for a short time or a longer time.
 It is available to you at affordable group rates, conveniently payroll deducted by your employer.
(Emphasis in original.) It does not mention any limitations or exclusions from coverage. The handout, however, lists a number of "exclusions" including "any occupational injury or sickness under STD."
Under the policy, short-term disability ("STD") is defined as when
due to sickness or injury: [insured is] unable to perform the material and substantial duties of [his/her] regular occupation; and [he/she is] not working in any occupation. [Emphasis in original.]
The UNUM policy provides an exclusion to coverage that states, in pertinent part, that the STD plan:
does not cover any disabilities caused by, contributed to by, or resulting from your:
-occupational sickness or injury, however, UNUM will cover disabilities due to occupational sickness or injuries for partners or sole proprietors who cannot be covered by a workers' compensation law. . . . [Emphasis in original.]
The exclusion defines "occupational sickness or injury" as "a sickness or injury that was caused by or aggravated by any employment for pay or profit." [Emphasis supplied.]
As a result of the 17 May accident, Lee filed for STD benefits under the UNUM policy, but coverage was denied by UNUM on the grounds that her injury was not covered, insofar as it met the definition of an "occupational sickness or injury." Lee appealed the denial of coverage on 9 August 2001, but was again denied on 28 August 2001.
Lee filed suit against UNUM on 3 July 2002, alleging that UNUM improperly denied her claim, insofar as the only written material received by Lee describing the policy consisted of a single pamphlet from UNUM and a two-page document on UNUM letterhead, the relevant portions being noted above.
The handout, entitled

Orleans Parish School Board

SHORT TERM/LONG TERM DISABILITY PROGRAM
provides a "brief description of the group disability (STD/LTD[2]) insurance being made available to you by UNUM Life Insurance Company of America." The second page of the document contains a section entitled "Exclusions" and provides the following:

*1024 Benefits would not be paid for loss resulting from war, declared or undeclared, or any act of war; active participation in a riot; intentionally self-inflicted injuries; loss of a professional, occupational license or certification; commission of a crime for which you have been convicted under state or federal law; any period of disability during which you are incarcerated; any occupational injury or sickness under STD; or, any pre-existing condition for which you receive treatment in the 3 months prior to your effective date which causes a disability within the first 12 months after your effective date under LTD. [Emphasis supplied.]
Both UNUM and Lee filed motions for summary judgment, which were heard on 28 March 2003. UNUM asserted in its motion that by the terms of the policy issued to Lee, she was not entitled to any short-term disability benefits, because her injuries were sustained while she was working. Lee maintained, however, that her injuries were not "caused by" her employment, but rather were caused by the actions of a third party tortfeasor, and not excludable under the policy by its clear language. She further argued that even if the policy were found to be ambiguous, she would be entitled to benefits, because any ambiguities in the exclusionary language should be construed against UNUM under Louisiana law. Lee finally asserted that she was entitled to statutory penalties and attorneys' fees from UNUM for arbitrarily refusing to pay her benefits.
In support of her motion for summary judgment, Lee filed a list of uncontested material facts,[3] an affidavit attesting to the veracity of the uncontested material facts, a photocopy of the pamphlet and hand-out briefly describing disability coverage given to school board employees, a copy of her pay statement for the period 17 May to 30 May 2001, photocopied excerpts from the policy defining exclusions and "gross disability payment," as well as a copy of UNUM's opinion letter denying Lee's claim for benefits. UNUM's motion was supported by a copy of its file detailing Lee's claims as well as a copy of the policy.[4] No verification of the policy was attached.
On 8 April 2003, the trial court granted Lee's motion for summary judgment and denied UNUM's cross-motion for summary judgment without issuing written reasons. UNUM sought supervisory review of the decision, but this court and the Supreme Court declined to review the decision. Lee v. Unum Life Ins. Co. of America, 03-0954, unpub. (La.App. 4 Cir. 7/18/03), writ denied, 03-2307 (La.11/21/03), 860 So.2d 549.
On 17 February 2004, Lee filed a second motion for summary judgment seeking calculation of an award for her STD benefits, an award for LTD benefits, as well as an award for penalties and attorneys' fees pursuant to La. R.S. 22:658, and costs; the *1025 motion was heard on 26 March 2004. In support of her second motion for summary judgment, Lee filed a second statement of uncontested material facts, which asserted that she was out of work from 17 May through 23 November 2001;[5] that she was earning $10.33 per hour, or $692.00, every two weeks at the time of the accident; that disability benefits are calculated at 60% of her weekly pre-taxed earnings, or $207.63; that she did not participate in the drafting of the policy and did not negotiate its terms; and that she would not have enrolled in UNUM's policy plan had she known that injuries arising out of an automobile accident caused by a third party would not be covered under the plan.
UNUM opposed the second motion for summary judgment, arguing that it had uncovered new evidence that suggested that Lee was not entitled to any STD benefits under the policy, because she had never enrolled in the plan. UNUM also asserted that Lee was never enrolled in the LTD program for the 2000-2001 school year, and unable to collect LTD benefits. Further, UNUM stated that it had been advised that school bus drivers are not paid during the summer months of June, July, and August in Orleans Parish; therefore, Lee did not lose her salary for those months that she was disabled.
The trial court did not rule in open court, taking the matter under advisement. On 6 April 2004, UNUM filed a motion entitled "Ex Parte Motion to Hold Ruling in Abeyance." In its motion, UNUM stated its intent to file its own motion for summary judgment on the issue of the amount of benefits due Lee, and further asserted that it had, in its investigation, discovered that Lee was never approved for coverage under either the STD or LTD plans. UNUM noted that it had only recently discovered this fact because it relied upon the employer (the OPSB) to advise it if an employee is covered when that employee submits a claim for benefits. It did not supply any evidence to the court in support of this contention, but rather prayed for additional time (until 30 April 2004) to produce the evidence before the court ruled on the second, dispositive motion for summary judgment. The trial court denied the motion.
The trial court granted Lee's second motion for summary judgment on 14 April 2004, awarding her $6,433.28 in LTD benefits; a penalty of 25% of the award; attorneys' fees and legal interest from the date of demand; and costs of the proceedings.
UNUM filed a motion for new trial on 23 April 2004, asking the trial court to set aside its judgment because prior to the signing of the 14 April 2004 judgment, UNUM discovered evidence in support of its defense that it could not, with due diligence, have obtained before or during Lee's second motion for summary judgment. Attached to its motion, UNUM submitted an affidavit executed by Daisy Barbain ("Barbain"), a Confidential Clerk in the Department of Human Resources at the OPSB. Barbain stated that she was authorized by the OPSB to make the affidavit on its behalf and that Lee's base pay at the time she was injured was $619.80 biweekly, or $10.33 per hour. She further stated that the amount earned by Lee in excess of that amount is categorized as "straight time overtime" and is not used when calculating the cost of coverage under the UNUM plan and policy. Barbain also stated that Lee received workers' compensation benefits from May 2001 *1026 through 14 November 2001 in the amount of $274.93 per week.
Barbain executed a second affidavit that stated that the OPSB payroll department deducts premium payments from employees' paychecks for UNUM's STD and LTD plans and that the deductions continue until the payroll department is notified. She further stated that when a claim for disability benefits is submitted, her practice is to review the employee's payroll information to see if deductions are being made; if the deductions are noted on the payroll, she advises UNUM that the employee is covered. However, in the present matter, Barbain was not informed that Lee's application for coverage with UNUM had not been approved. Therefore, when counsel for UNUM initially contacted her, she was under the mistaken belief that Lee was a covered employee. Upon an investigation, Barbain determined that Lee had had a total of $704.73 deducted from her paychecks over several months, paying $395.46 in STD premiums and $309.27 in LTD premiums.
UNUM also submitted an affidavit executed by Deborah M. Domini, a Regional Service Manager for UNUM, which stated that under the LTD policy insuring the OPSB, the OPSB had the responsibility of maintaining employees' records regarding eligibility, changes in coverage, termination of coverage, and occupational information. Further, Domini stated that when an employee makes a claim for benefits, UNUM relies on the OPSB to advise whether that employee is covered under the policy in question.
UNUM attached to the motion a copy of a document bearing a signature purported to be Lee's which authorized discontinuation of deductions for UNUM's LTD plan and which is dated 7 August 2001, as well as further documentation regarding her pay scale and documents that cast doubt on her enrollment in the UNUM disability plan at the time of the accident.
On 16 June 2004, the trial court issued an amended judgment modifying the penalty award, increasing it from 25% to 50% of the LTD benefits award. By judgment of the same date, the trial court further denied UNUM's motion for new trial and issued written reasons for its judgment. Specifically, the trial court found that Lee did not receive a copy of the policy issued by UNUM (and therefore, presumably, was not bound by its provisions);[6] that Lee did not suffer an "occupational injury caused by employment" because her injuries were solely caused by the negligence of a third party motorist; that UNUM had no legal basis to deny Lee's claim for benefits; that UNUM was arbitrary and capricious in refusing Lee's claim; and that UNUM
did not exercise due diligence in ascertaining the status of the insured with regards to whether she was covered by the policy, nor in confirming her salary calculations. . . .
Therefore, the court reasoned that UNUM was not entitled to a new trial. UNUM suspensively appealed the judgments.
UNUM specifies five assignments of error committed by the trial court. UNUM asserts that the trial court erred as a *1027 matter of law in (1) denying UNUM's motion for summary judgment based on the "occupational injury" exclusion and by granting summary judgment in Lee's favor; (2) granting Lee's motion for summary judgment based on "unsworn and unverified documents" that did not establish her right to disability benefits; (3) refusing to apply the policy offset for workers' compensation benefits received by Lee; (4) making findings of fact when granting Lee's summary judgments; and (5) by holding UNUM to a "due diligence" standard to obtain evidence to defend itself in this suit. UNUM also argues that to allow the trial court judgment to stand would allow Lee to "double-dip" and actually receive more in compensation and benefits for her injuries than she would have received in salary for working during that time, which, in its estimation, would be an "absurd" conclusion to this litigation.
A summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, admissions on file, and/or affidavits show that no genuine issue of material fact exists. La. C.C.P. art. 966B. Summary judgment is favored and is designed to secure "the just, speedy, and inexpensive determination" of litigation. La. C.C.P. art. 966A(2). When the mover has submitted evidence establishing the absence of material factual disputes and that it is entitled to a judgment as a matter of law, "an adverse party may not rest on the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. arts. 966 C(1) and 967.
Appellate review of the granting or denial of a motion for summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226; Guillory v. Interstate Gas Station, 94-1767, p. 5 (La.3/30/95), 653 So.2d 1152, 1155. In order for Lee to prevail on summary judgment, she had to establish through affidavits, verified documents, and/or other admissible evidence that she (1) was disabled for the period during which she claims benefits were due; (2) she and her disability were covered under the policy plan provided by UNUM to the OPSB; (3) UNUM did not honor her claim for benefits after she submitted proof of her disability; and (4) UNUM did not have a just or reasonable basis for denying her claims. A review of the record on appeal with regard to Lee's first motion for summary judgment reveals that insufficient admissible evidence was put forth to establish that Lee was in fact disabled for the claimed period before the trial court granted the motion. Specifically, Lee introduced no certified medical records or medical testimony to document her disability. Although the first motion for summary judgment is accompanied by an affidavit executed by Lee stating the dates of her disability and describing her pay scale, her testimony alone is not sufficient to verify all of the documents she relied upon in her motion for summary judgment, especially in light of the confusion surrounding her pay scale and the amount of her salary properly used to compute her disability benefits.[7] Therefore, we find that the *1028 trial court improperly granted Lee's first motion for summary judgment.
We further find, however, that UNUM's cross-motion for summary judgment was properly denied. The motion filed by UNUM was also deficient in terms of evidentiary support, insofar as the policy provided by UNUM was not verified.[8]
With regard to Lee's second motion for summary judgment, we find that it was also improperly granted. Like the first, the second motion for summary judgment was unaccompanied by certified medical records or medical testimony that would establish her disability. Further, the copies of her pay stubs are insufficient to establish the proper rate of disability benefit, if any at all is due to Lee under the plan. As we have previously found, attaching unverified documents, such as letters of reports, to a motion for summary judgment "does not `magically' transform such documents into competent summary judgment evidence." Williams v. Memorial Center, 03-1806, p. 14-15 (La.App. 4 Cir. 3/17/04), 870 So.2d 1044, 1053.
Although we find that Lee's motions for summary judgment should have been denied for lack of proper evidentiary support, we note that UNUM specifically has asked for guidance on the issue of whether the exclusionary clause regarding losses "caused by" Lee's employment operates to deny Lee coverage under the policy. This is a question of law.
Lee asserts that the clause is clear in that it only excludes coverage for losses directly caused by the employment of the insured. The motion for summary judgment filed by UNUM asserts that the exclusionary clause at issue does not provide coverage for what was undisputedly a work-related injury as a matter of law, and therefore covered by workers' compensation law and not the disability policy plan. UNUM maintains that the language of the policy is clear and unambiguous: no coverage is provided for any work-related injury or illness, regardless of any "creative interpretation" of the exclusionary clause by Lee. Lee maintains, on the other hand, that her injuries were not "caused by" her employment; rather, they were caused by the tortious act of a third party. The crux of the dispute between UNUM and Lee, therefore, is whether the phrase "caused by . . . any employment for pay or profit" is sufficient to exclude the injuries Lee sustained in the course and scope of her employment. We find that it is not.
As this court noted in Michelet v. Scheuring Sec. Services Inc., 95-2196 (La. App. 4 Cir. 9/4/96), 680 So.2d 140, 147:
When the language of a policy is clear and not ambiguous, the insurance contract must be enforced as written. When the wording is clear, the courts lack the authority to alter or change the terms of the policy under the guise of interpretation. Louisiana Insurance Guaranty Association v. Interstate Fire Casualty Company, 93-0911 (La.1/14/94), 630 So.2d 759. In interpreting insurance contracts the judicial responsibility is to determine the parties' common intent. Such intent is to be determined according to the ordinary, plain and popular meaning of words used in a policy. La. C.C. arts. 2045 and 2047; Breland v. Schilling, 550 So.2d 609 (La.1989).
*1029 However, when the terms (and exclusions) of an insurance contract are vague or ambiguous, any ambiguities are construed to provide coverage to the insured under Louisiana law. Carrier v. Reliance Ins. Co., 99-2573, p. 12 (La.4/11/00), 759 So.2d 37, 44; Garcia v. St. Bernard Parish School Bd., 576 So.2d 975, 976 (La.1991). A policy provision is ambiguous if it has more than one reasonable interpretation. Id. However, an insurance contract
should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms to achieve an absurd conclusion.
Edwards v. Daugherty, 03-2103, p. 12 (La.10/1/04), 883 So.2d 932, 941, citing, Cadwallader v. Allstate Ins. Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580; Carrier v. Reliance Ins. Co., 99-2573, p. 11 (La.4/11/00), 759 So.2d 37, 43; Peterson v. Schimek, 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1029.
In the matter sub judice, both UNUM and Lee maintain that the exclusionary language is clear; however, each party has supplied a unique interpretation of that language. Lee asserts that the phrase "caused by . . . employment" does not serve to exclude her injuries from coverage; her injuries were solely caused by the negligence of a third party motorist, and not by any specific activity or task she was performing in her job. That is, she asserts that "but for" the negligence of the third party, she would not have been injured. We find that this interpretation is not unreasonable. There may be a distinction in the mind of a reasonable insured between injuries caused by the mere performance of her job, such as carpal tunnel syndrome, or injuries sustained as a result of defective automotive equipment and injuries sustained while in the course of one's job, but brought on by independent, outside forces, such as a motor vehicle accident caused by a third party.
UNUM, however, asserts that the language "caused by . . . employment" clearly operates to exclude coverage for any injury sustained by an insured while in the course and scope of employment. UNUM cites Louisiana case law interpreting the scope of work-related injuries for the purposes of workers' compensation cases and notes that in that context, "occupational injury" is construed to include any injury sustained while an employee is on the job.[9] In the context of its disability policy (which specifically extends disability coverage to "partners or sole proprietors who cannot be covered under a workers' compensation law") we do not find this interpretation unreasonable, insofar as it is customary for disability policies to exclude coverage for injuries compensable under workers' compensation laws or arising out of a beneficiary's employment. However, we also do not find that the legal scope of "occupational injury" in the workers' compensation context governs the interpretation of the exclusionary clause in the UNUM policy. It is the reasonable interpretation of an insured that governs the legal effect of language in an insurance contract, and not whether the language chosen by an insurer may constitute a legal term of art in another context.[10]
*1030 Our review of the jurisprudence regarding disability (or health and accident) policies confirms our holding. UNUM relies upon Pinell v. Patterson Services, Inc., 491 So.2d 637 (La.1986), in support of its position. In Pinell, the Supreme Court held that an injured employee who had received benefits under the Longshoremen's and Harbor Workers' Compensation Act was not entitled to recover under a group accident policy providing weekly accident and sickness benefits because the policy excluded those benefits. While UNUM asserts that this case supports its contention that Lee should not be allowed to "double-dip", we note that the Court analyzed the specific language of the exclusion in denying relief to the employee and did not base its ruling on whether the employee could recover benefits from multiple sources.[11] The exclusion in the Pinell policy provided that no benefits were payable
for or on account of (1) any bodily injury or sickness for which the person on whom claim is presented has or had a right to compensation under any Workmen's Compensation or occupational disease law, or; (2) any bodily injury or sickness which arises from or is sustained in the course of any occupation or employment for compensation, profit or gain . . ."
The obvious distinction between the policy in Pinell and UNUM's policy is that the exclusion in Pinell was specifically and carefully worded to exclude injuries sustained in the course of the injured claimant's employment; the exclusion UNUM relies upon was not.
We find that UNUM's argument that public policy considerations against "double recovery" for injured employees is without merit. We note the language from the dissent in Bentley v. Allstate Ins. Co., 97-0692 (La.App. 4 Cir. 10/22/97), 701 So.2d 257, which was adopted by the Louisiana Supreme Court in Bentley v. Allstate Ins. Co., XXXX-XXXX (La.3/20/98), 715 So.2d 1195:
Moreover, the majority's attempt to distinguish this case form the Pinell case based on the fact that the plaintiff in this case is not being afforded double recovery is misplaced. Although Pinell does point to the fact that the plaintiff would have been allowed double recovery if the exclusion had been applied, it does not make double recovery a requirement for finding that the exclusion applies. The Pinell case is correctly based on pure contract interpretation, which requires that this court interpret insurance policies, like other contracts, according to the clear, unambiguous language of the policy.
Bentley, pp. 1-2, 701 So.2d at 260. We believe that UNUM intended to exclude injuries incurred while working (like Lee's) from coverage under its disability plan, and further recognize that whether an employee is receiving more than complete recovery is a factor properly examined by the court. However, it is not UNUM's intent regarding the policy language that is in question; it is the manner in which they (arguably failed to) communicate this intention to its policy plan beneficiaries.
We find that both parties have supplied reasonable interpretations of the exclusionary clause at issue. Therefore, as a matter of law, we find that the exclusionary clause is ambiguous and vague and may not be applied to Lee's claim for disability *1031 benefits, should she be covered under the policy plan.
Because we find that summary judgment was improperly granted in Lees favor (and that the trial court improperly considered inadmissible documents and evidence in so ruling), we pretermit discussion of the remaining assignments of error as moot. This case is one that was not properly resolved on summary judgment in light of the numerous genuine issues of material fact (most importantly, whether Lee was enrolled in the UNUM plan at the time of her accident) and we remand this case for further proceedings to resolve those factual issues.
Therefore, we find that the trial court erred in granting Lee's motions for summary judgment, given the lack of admissible evidence before it at the time of the rulings. However, we affirm the trial court with regard to the denial of UNUM's motion for summary judgment. The judgments in favor of Lee are vacated and the case is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; REMANDED.
ARMSTRONG, C.J., concurs in the result.
ARMSTRONG, C.J., concurs in the result.
I respectfully concur in the result reached in the majority opinion.
NOTES
[1] Although a dispute exists as to Lee's status as an approved beneficiary (her enrollment) under the plan, it is undisputed that she made premium payments for coverage under the UNUM plan beginning in 1999.
[2] "LTD" refers to long-term disability.
[3] In her list of uncontested material facts, Lee asserts that she never received a copy of the policy issued by UNUM to the OPSB.
[4] The exclusion at issue is contained in the "certificate of coverage" section of the policy. La. R.S. 22:215(A)(1)(a)(v) provides that "[t]he insurer shall issue to the employer or association for delivery to each employee or member insured under such group policy, an individual certificate containing a statement as to the insurance protection to which he is entitled and to whom payable." Therefore, while the parties use the term "policy" to describe the documentation that a covered beneficiary of the plan should receive, we recognize that the document that is disbursed to covered employees is actually the certificate of coverage, and not the entire policy, which is held by the OPSB. See also, La. R.S. 22:230.
[5] We note the discrepancy between the first and second statements of uncontested material facts, insofar as the first established 14 November and not 23 November 2001 as the date through which Lee was unable to work.
[6] The trial court specifically found that UNUM was not entitled to any offsets or credits for workers' compensation payments made to Lee arising out of the same injury, although such is provided for in the policy, because it found that Lee did not receive the policy. We note that it may not be customary for the beneficiary (Lee) to actually receive a copy of the full policy issued by UNUM to the OPSB. The policy is that of the OPSB and the beneficiary receives a certificate and a summary of policy provisions. See, La. R.S. 22:215(a)(1)(v) and footnote 4, supra.
[7] UNUM points out that Lee has used conflicting figures in her pleadings and memoranda to establish the amount of her disability benefit. Lee's statement of uncontested material facts lists her biweekly wage as $692.11 (including overtime), but later relied upon a document purportedly from the Office of Workers' Compensation, which indicated that her average weekly wage was $412.39. There is no evidence in the record to establish which figure is "correct" or how the workers' compensation payments relate to the definition of "weekly earnings" under the policy plan.
[8] This defect is particularly important in the present case, as Lee has asserted that she never received a copy of the policy and seeks to escape its exclusionary and limiting provisions.
[9] See, Martin v. Rollins Services, Inc., 424 So.2d 429 (La.App. 4 Cir.1982); Hammond v. Fidelity Cas. Co. of New York, 419 So.2d 829 (La.1982).
[10] Had the exclusion barred claims "arising out of" or injuries sustained "in the course of" an insured's employment, Lee's claims for disability benefits clearly would have been excluded, as no ambiguity surrounding that language exists.
[11] In fact, we note that there is no specific legal prohibition to a claimant receiving benefits or recovery from multiple sources for the same injuries (in this context), although public policy issues exist that a court may consider; one might surmise that that is one reason the wording of an insurance policy is critical under Louisiana law.